UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY BLIXSETH,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES IMMIGRATIONS AND CUSTOMS ENFORCEMENT,<br><br>    Defendant. | Civil Action No. 19-1292 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Timothy Blixseth's quest for information relating to suspected government corruption has led him to file five Freedom of Information Act suits in this Court against various agencies he claims were complicit. This time around, he alleges that Defendant United States Immigrations and Customs Enforcement conducted an inadequate search in response to both of his FOIA requests and wrongfully withheld certain documents as to one of them. Having produced hundreds of pages, the Government now moves for summary judgment, and Plaintiff simultaneously asks for discovery. After reviewing the contested documents *in camera*, the Court finds the remainder of this case as quixotic as the others and will grant the Government's Motion and deny Blixseth's.

**I.    Background**

Blixseth here alleges that the records he seeks contain information suggesting that federal-government actors, at the direction of private individuals whom he was suing, conducted searches of his property aimed to intimidate him into dropping that case. See ECF No. 1 (Complaint), ¶ 2; see also, e.g., Blixseth v. U.S. Coast Guard, No. 19-2297, 2019 WL 6841722,

1

at *1 (D.D.C. Dec. 16, 2019). Specifically, Plaintiff believes that ICE thrice searched his private airplane to cow him into submission. He thus seeks:

1. All documents that refer or relate to Blixseth, Aircraft Tail Number N650GC, or Yellowstone Aviation & Marine.

2. All emails from any and all of former U.S. ICE Director John Morton's email accounts from the period of January 1, 2010 through December 31, 2010, referencing:

   a. N650GC
   b. Yellowstone
   c. Yellowstone Aviation & Marine
   d. Blixseth

ECF No. 15-2 (Declaration of Toni Fuentes), Exh. 2 (Request Letter) at 2 (footnote omitted). Blixseth submitted these requests in April 2018, and ICE's FOIA office responded in August with 357 pages of unredacted records, all responsive to only the second request. Id., Exh. 4 (Response Letter) at 1; id., Exh. 5 (Appeal Letter) at 1. After an administrative appeal, ICE subsequently identified 48 pages of records responsive to the first request, releasing portions of 42 pages and withholding six others in their entirety under FOIA Exemptions 6 (information that invades another individual's personal privacy), 7(C) (information that was compiled for law-enforcement purposes and threatens to disclose personal information or the identity of a confidential source), and 7(E) (information compiled for law-enforcement purposes whose publication would disclose techniques and procedures for investigations or prosecutions). See id., Exh. 8 (Appeal Response Letter) at 1–2.

After Blixseth filed the present suit in May 2019 claiming both an inadequate search and wrongful withholding, see Complaint, ¶¶ 38, 44, ICE made a supplemental release of some previously withheld information on the first of those 48 pages. See Fuentes Decl., Exh. 9 (Supplemental Release Letter) at 1. The Government now moves for summary judgment, and

Plaintiff moves for discovery. In the alternative, he requests *in camera* review of the 48 withheld pages. The Court accepted this last invitation and ordered Defendant to provide it with unredacted copies of the disputed pages, see Minute Order of Dec. 17, 2019, which it has now reviewed.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). "Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits its own affidavits[,] . . . declarations[,] or documentary evidence to the contrary." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992)).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Id. (citing Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). In these cases, the agency bears the ultimate burden of proof to demonstrate the adequacy of its search, Steinberg v. DOJ, 23 F.3d 548, 551 (D.C. Cir. 1994), and that it properly withheld any documents. See 5 U.S.C. § 552(a)(4)(B); DOJ v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 755 (1989). The Court may grant summary judgment based solely on information

3

provided in an agency's affidavits or declarations when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### III. Analysis

The Court first jointly addresses the adequacy of Defendants' searches and Plaintiffs' request for discovery. It then turns to the Government's claimed exemptions.

#### A. Search Adequacy and Discovery

In its Motion for Summary Judgment, Defendant argues that it performed reasonable searches as to both requests and thus discharged its obligations under FOIA. Plaintiff responds to these arguments only in the context of requesting discovery into the viability of the searches.

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. U.S. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. DOJ, 23 F.3d at 551 (same). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends,

4

not surprisingly, upon the facts of each case." Id. To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). The affidavits or declarations should "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. See Perry, 684 F.2d at 127. "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

There is no such doubt here. In its Motion and appended declaration, Defendant describes in detail its searches using Plaintiff's suggested terms and in the places he requested. See ECF No. 15 (Def. MSJ) at 4–7; Fuentes Decl., ¶¶ 6–34. Having reviewed the declaration of Toni Fuentes, the Deputy Officer of ICE's FOIA office, and having considered Plaintiff's arguments, the Court is convinced that there is no genuine issue of material fact as to the adequacy of ICE's searches.

As to the first category of records — "[a]ll documents that refer or relate to Blixseth, Aircraft Tail Number N650GC, or Yellowstone Aviation & Marine," Request Letter at 2 (footnote omitted) — the ICE FOIA office assigned the search to ICE's Homeland Security Investigations office, see Fuentes Decl., ¶¶ 24, 32, which in turn assigned it to its Records and Disclosure Unit. Id., ¶¶ 30, 32. RDU conducted a search of HSI's Investigative Case Management system, which is "the database most likely to contain information regarding the [field] office responsible for a specific investigation." Id., ¶ 30; see id., ¶ 32. RDU's search consisted of three different efforts: (1) searching for "N650GC" in the tail-number search field,

(2) searching for "Blixseth" in the business-name field, and (3) searching for "Yellowstone Aviation and Marine," again in the business-name field. Id., ¶ 32. None of these searches uncovered any responsive records. Id.

Upon Blixseth's appeal of this result, RDU performed a further search, "this time using an open field keyword search using the term 'N650GC.'" Id., ¶ 33. "This search identified the [HSI] Los Angeles International Airport ('LAX') office as the responsible office for the investigation involving the tail number N650GC and determined that a search at that [HSI] LAX office for potentially responsive documents should be conducted." Id. After receiving the search request, four members of the LAX office each conducted a 20-minute search on his or her computer and email using the three terms specified (and some additionally searched for the word "Yellowstone" alone). Id., ¶ 34. These searches yielded 48 total pages. Id.

As to the second category of documents — "[a]ll emails from any and all of former U.S. ICE Director John Morton's email accounts from the period of January 1, 2010 through December 31, 2010, referencing" the terms "N650GC," "Yellowstone," "Yellowstone Aviation & Marine," and "Blixseth," Request Letter at 2 — ICE's FOIA office assigned the search to the Office of the Chief Information Officer within its Management and Administration office. See Fuentes Decl., ¶¶ 17, 24–25. The M&A OCIO "was tasked to conduct a search of former U.S. ICE Director John Morton's e-mail accounts" with the dates and terms specified by Plaintiff, id., ¶ 27, and that office did so using the systems they normally use for such a request. Id., ¶¶ 26, 28. The search located 357 pages, id., ¶ 28, none of which was redacted.

Despite these efforts, Plaintiff counters that "there exists a strong factual basis that ICE failed to conduct an adequate search." ECF No. 17 (Pl. Opposition to MSJ) at 8. He first argues that the production of 48 pages of responsive records after appeal is suspicious, but the Court

6

cannot agree. As just articulated, the Government has explained the discrepancy in the results by noting that the post-appeal search used open-keyword searches rather than specific search fields. Blixseth next maintains that the "ICE Marine Operations Center" must have documents because it does not deny that the plane searches occurred. Id. at 8–9. But, as Defendant notes, the Marine Operations Center belongs to a different agency — U.S. Customs and Border Protection. To be an "agency record" within the meaning of FOIA, a document must be both (1) created or obtained by the entity from which the information was requested, and (2) controlled by that entity at the time of the FOIA request. Judicial Watch, Inc. v. U.S. Secret Serv., 726 F.3d 208, 217 (D.C. Cir. 2013) (quoting DOJ v. Tax Analysts, 492 U.S. 136, 144–45 (1989)). Documents obtained or controlled by an agency other than the one processing the request do not constitute part of the defendant agency's FOIA obligation. As a result, Plaintiff's argument that ICE was required to search the records of different DHS agencies falls short.

Blixseth's only remaining complaints are that the LAX HSI office did not spend enough time searching its computers for responsive documents and that employees there may not have reviewed hard-copy documents as part of their search. The Court does not find these cavils sufficient to create a "material doubt," Valencia-Lucena, 180 F.3d at 325, that the search was "reasonably calculated to uncover all relevant documents." Truitt, 897 F.2d at 542. To start, Blixseth has offered no explanation as to why 20 minutes per person would be insufficient to uncover responsive documents. On the contrary, common sense dictates that it would not take much longer than that to enter three or four different search terms on one's hard drive and various applications. And, indeed, these searches yielded 48 pages of responsive documents. ICE, moreover, asserts that its standard search practice is to search "both paper files and electronic files." Fuentes Decl., ¶ 30. The Court has no reason to believe that the LAX HSI did

not do so here.  See SafeCard, 926 F.2d at 1200 ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'") (quoting Ground Saucer Watch, 692 F.2d at 771).

The Court is thus satisfied that ICE has fulfilled its search duties under FOIA.  Although the Government does not incant the "magic words" — *i.e.*, that it "searched all locations likely to contain responsive documents," Bartko v. DOJ, 167 F. Supp. 3d 55, 64 (D.D.C. 2016) — it does state that it has searched the offices and databases most likely to contain responsive records, see Fuentes Decl., ¶¶ 24, 30, and Plaintiff does not allege that there are other places within ICE that it should have searched.  The Court therefore finds that Defendant is entitled to summary judgment on Count I of the Complaint.

This takes us to the question of discovery.  "To begin with, [d]iscovery is generally inappropriate in a FOIA case."  Freedom Watch, Inc. v. U.S. Dep't of State, 77 F. Supp. 3d 177, 183 (D.D.C. 2015) (quoting Gov't Accountability Project v. DOJ, 852 F. Supp. 2d 14, 27 n.5 (D.D.C. 2012)).  "More important," as explained below, "Plaintiff here has offered no valid reason to question the good faith or efficacy of [ICE]'s search."  Id.; see *infra* Section III.B.1 (rejecting Blixseth's allegations of government impropriety).  As just discussed, ICE has amply acquitted itself of its statutory duty to search.  "No more is required under FOIA."  Blixseth, 2019 WL 6841722, at *4.

B.  Exemptions

Defendant next contends that it is entitled to summary judgment on the second issue — *viz.*, the improper-withholding claim — on the ground that it has released all responsive documents and withheld only as allowed by FOIA.  The statute requires that agencies provide all responsive records unless they fall into one of nine exemption categories.  See 5 U.S.C.

8

§ 552(b)(1)–(9). Where the agency withholds records, it bears the burden of showing that at least one of the exemptions applies. See Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975). Here, ICE relied on Exemptions 6, 7(C), and 7(E) in withholding six pages in full as well as portions of the other 42. The Fuentes Declaration provides explanations of the applicability of these exemptions, as well as a Vaughn Index listing which exemption applies to which redaction. See Fuentes Decl., ¶¶ 35–56; id. Exh. 1 (Vaughn Index).

1. *Exemptions 6 and 7(C)*

The Court first analyzes whether ICE was correct to withhold certain information under Exemptions 6 and 7(C). In the present case, these two exemptions, always invoked together, have been applied to portions of the 42 partially redacted pages as well as to the six fully withheld ones.

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) excludes from disclosure "records of information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. § 552(b)(7)(C). Both provisions require agencies and reviewing courts to "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." Beck v. DOJ, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting Davis v. DOJ, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

Although both exemptions require agencies and reviewing courts to undertake the same weighing of interests, the balance tilts more strongly toward nondisclosure in the context of Exemption 7(C) because "Exemption 7(C)'s privacy language is broader than the comparable

language in Exemption 6 in two respects." Reporters Comm., 489 U.S. at 756. First, Exemption 6 encompasses "clearly unwarranted" invasions of privacy, while Exemption 7(C) omits the adverb "clearly." Id. (quoting 5 U.S.C. § 552(b)). Second, Exemption 6 prevents disclosures that "would constitute" an invasion of privacy, while Exemption 7(C) targets disclosures that "could reasonably be expected to constitute" such an invasion. Id. (quoting 5 U.S.C. § 552(b)). Both differences are the result of specific amendments, reflecting Congress's conscious choice to provide greater protection to law-enforcement materials than to personnel, medical, and other similar files. Id. Courts have accordingly held that Exemption 7(C) "establishes a lower bar for withholding material" than Exemption 6. ACLU v. DOJ, 655 F.3d 1, 6 (D.C. Cir. 2011); see also Beck v. DOJ, 997 F.2d at 1491.

As a result, if the records and information Defendant seeks to withhold in this case were "compiled for law enforcement purposes," the Court need only address whether the agency has properly withheld these documents under Exemption 7(C), and there is no need to separately consider the higher bar of Exemption 6. See Braga v. FBI, 910 F. Supp. 2d 258, 266–67 (D.D.C. 2012) (rejecting argument that Exemptions 6 and 7(C) must be analyzed separately even when records in question were compiled for law-enforcement purposes).

There is little doubt that such is the case here. To start, because ICE's Homeland Security Investigations office clearly "specializes in law enforcement," its determination that these documents were compiled for law-enforcement purposes merits deference. Bartko v. DOJ, 898 F.3d 51, 64 (D.C. Cir. 2018) (alteration omitted) (quoting Campbell v. DOJ, 164 F.3d 20, 32 (D.C. Cir. 1998)). The Court's review of the documents, including the unredacted versions *in camera*, confirms this position. The first 23 pages here are records made by HSI after a background investigation into various aircraft and their owners, passengers, and crew, compiled

in order to determine whether to allow an expedited flight-clearance process. The next six pages, withheld in full, are similar in nature. The following nine consist of the same type of investigative records. And the final ten pages contain emails directly related to those investigative records. Because all the documents constitute records of HSI's investigation into the safety of an expedited flight clearance for various aircraft, businesses, and persons, they are law-enforcement records. See Mittleman v. OPM, 76 F.3d 1240, 1243 (D.C. Cir. 1996) ("'Enforcement' of the law fairly includes not merely the detection and punishment of violations of law but their prevention.") (alteration omitted) (quoting Miller v. United States, 630 F. Supp. 347, 349 (E.D.N.Y. 1986)); see also Judicial Watch, Inc. v. U.S. Dep't of State, 282 F. Supp. 3d 36, 43 (D.D.C. 2017) (finding records of security-clearance background investigation were compiled for law-enforcement purposes).

This threshold question answered, the Court will analyze the withholdings under only the Exemption 7(C) framework. See Braga, 910 F. Supp. 2d at 266–267. In doing so, it thus weighs the privacy interests at stake in disclosure against the public interest in release, finding for the Government if "production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Here, the information redacted under Exemption 7(C) consists entirely of (1) identifying information about law-enforcement personnel, and (2) sensitive personal information about flight passengers or crew. Both have been recognized by the D.C. Circuit as holding a privacy interest. First, "law-enforcement personnel who 'do[] not forgo altogether any privacy claim in matters related to official business'" are entitled to the privacy afforded by FOIA. Bartko, 898 F.3d at 71 (alteration in original) (quoting Lesar v. DOJ, 636 F.2d 472, 487 (D.C. Cir. 1980)). Second,

"'third parties' . . . mentioned in investigatory files maintain a privacy interest 'in keeping secret the fact that they were subjects of a law enforcement investigation.'" Id. (quoting Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 894 (D.C. Cir. 1995)). Indeed, this latter interest is so strong that our Circuit has "adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" Schrecker v. DOJ, 349 F.3d 657, 661 (D.C. Cir. 2003) (quoting SafeCard, 926 F.2d at 1206).

Weighed against these strong privacy interests, the public interest in disclosure does not tip the scales Plaintiff's way. As to the employees' identifying information — *viz.*, agent names and employee numbers — it "reveals little or nothing about an agency's own conduct" and thus "does not further the statutory purpose [of FOIA]." Beck, 997 F.2d at 1493 (quoting Reporters Comm., 489 U.S. at 773). Even "[t]he identity of one or two individual relatively low-level government wrongdoers" falls into this category, id., and while Blixseth broadly alleges government misconduct, he does not claim any wrongdoing by these investigative agents. With respect to the information about private citizens and companies, moreover, Blixseth would need to present "compelling evidence that the agency is engaged in illegal activity" in order to overcome the "categorical rule permitting an agency to withhold [such] information." Schrecker, 349 F.3d at 661 (quoting SafeCard, 926 F.2d at 1206). For such evidence, Plaintiff points to the fact that his aircraft was searched three times in three different locations. See Pl. Opp. at 11. But even the redacted version of the released documents provides a plausible explanation for the searches: Blixseth's aircraft "ha[d] been noted in DHS databases to have derogatory information related to suspicious financial activities and/or unreported departures," Bates No. 38, and further

12

investigation had been recommended based on the results of investigations into certain passengers and/or crew. Id., Nos. 10, 17. The Court's *in camera* review further confirms that there is no reason to believe misconduct occurred.

Plaintiff rejoins that government misconduct should be inferred from the lack of search records, but this is most likely attributable to their belonging to Customs and Border Protection rather than ICE. See Pl. Opp. at 11; Def. Reply at 3–4. In short, there is no compelling evidence of impropriety to outweigh the strong privacy interest outlined above. On the contrary, ICE's application of Exemption 7(C) "was measured and carefully calibrated to balance the competing private and public interests." Bartko, 898 F.3d at 71. The Government has met its burden with respect to its 7(C) redactions. Indeed, even applying the higher threshold of Exemption 6, the Government would prevail here.

2. *Exemption 7(E)*

Exemption 7(E) authorizes the Government to withhold records and documents if, *inter alia*, they were "compiled for law enforcement purposes," and their publication "would disclose techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E). ICE invokes this exemption for portions of all 42 of the partially redacted pages as well as for the six fully withheld pages. Although 7(C) covers much of the 42 pages, the Court looks to 7(E) for the remaining redactions. The fully withheld pages, however, are completely protected by 7(C), but the Court includes them in this discussion because the 7(E) reasoning is the same as for the partial redactions.

In order for the Government to invoke the "techniques and procedures" prong of 7(E), it must demonstrate that its withholdings meet three basic requirements. First, it must show that the documents were in fact "compiled for law enforcement purposes" and not for some other

13

reason. Id. Second, the Government must establish that the records contain law-enforcement techniques and procedures that are "generally unknown to the public." Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 849 F. Supp. 2d 13, 36 (D.D.C. 2012) (quoting Albuquerque Publ'g Co. v. DOJ, 726 F. Supp. 851, 857 (D.D.C. 1989)). Finally, it must demonstrate that disclosure "could reasonably be expected to risk circumvention of the law." Id. (quoting 5 U.S.C. § 552(b)(7)(E)).

The first element — that the documents were compiled for law-enforcement purposes — has been satisfied, as discussed with respect to Exemption 7(C). See *supra* Section III.B.1. As to the second requirement — that the redacted or withheld information be generally unknown to the public — the Government asserts as much, and Plaintiff does not deny it. See Fuentes Decl., ¶¶ 53–55; Pl. Opp. at 19. The redacted material includes things like record identification numbers, databases used for investigation, code numbers (but not what they stand for), and the questions and answers to certain inquiries undertaken as part of an HSI investigation. The Court therefore credits ICE's assertion that this information "is not readily known by the public." Fuentes Decl., ¶ 55.

Finally, the third element: whether disclosure could reasonably be expected to risk circumvention of the law. Contrary to Blixseth's argument that ICE's statements are "conclusory" and so do not meet its burden, see Pl. Opp. at 19, Fuentes's declaration provides ample justification. For instance, it asserts that information like record numbers, databases, and code numbers "could assist third parties in deciphering the meanings of the codes and/or could enable an individual to navigate, alter, and/or manipulate law enforcement databases." Fuentes Decl., ¶ 55; see also, e.g., Vaughn Index at 13 (same). This type of explanation has long been accepted by courts in this Circuit. See, e.g., Parker v. ICE, 238 F. Supp. 3d 89, 100–101 (D.D.C.

14

2017). Indeed, circuit precedent "sets a relatively low bar for the agency to justify withholding [under Exemption 7(E)]." Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011) (citing Mayer Brown LLP v. IRS, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). Given this low bar, the Government's adequate explanation, and the Court's own *in camera* review, this third requirement is easily satisfied.

    C. Segregability

The Court ends with segregability. FOIA requires that any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Generally, the agency must provide "a 'detailed justification' and not just 'conclusory statements' to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (determining government affidavits explained non-segregability of documents with "reasonable specificity").

Here, Blixseth argues that, in order to fulfill its statutory responsibility, ICE must segregate non-exempt portions of the six fully withheld pages relating to his first request. The Court, however, has reviewed these pages and agrees with the Government's analysis — *i.e.*, that the non-exempt information cannot be reasonably segregated without either compromising the purpose of the FOIA exemptions or offering meaningless words or phrases. See Mays v. DEA, 234 F.3d 1324, 1327 (D.C. Cir. 2000). It therefore finds that those six pages were properly withheld in full.

## IV. Conclusion

For the reasons stated above, the Court will grant Defendant's Second Motion for Summary Judgment, thus terminating this case. A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 14, 2020